United States District Court
Southern District of Texas
**ENTERED**
October 04, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| JOSHUA H. JUMBO, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:21-cv-03509 |
| § | |
| GOODWILL INDUSTRIES § | |
| HOUSTON, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant Goodwill Industries International, Inc.'s Motion for Summary Judgment. *See* Dkt. 25. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be **GRANTED**.

## BACKGROUND

Plaintiff Joshua H. Jumbo ("Jumbo"), proceeding *pro se*, brings this race- and national origin-based employment discrimination and retaliation case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. Jumbo has named Goodwill Industries Houston ("Goodwill Houston") and Goodwill Industries International, Inc. ("Goodwill International") as defendants. The sole issue presented to me in the Motion for Summary Judgment is whether Goodwill International is Jumbo's employer.

For purposes of the instant motion, the relevant facts are simple and straightforward. Goodwill Houston hired Jumbo as a cashier in July 2018. In October 2019, Jumbo applied for a Store Manager position. He did not get the job. Store Manager Elizabeth Johnson ("Johnson") told him that he was not qualified to be a Store Manager. Jumbo disagreed, and he filed a complaint with Goodwill Houston's human resources department, alleging that he "was being discriminated against because of [his] National Origin (Nigerian)." Dkt. 12 at 15.

In March 2020, Goodwill Houston demoted Jumbo to a Floor Associate position because his cash register was short $20.10. Jumbo reported to Johnson that his Assistant Manager "had been in [his] cash register without [his] knowledge." *Id.* at 14. Two Goodwill employees reviewed camera footage, which showed the Assistant Manager opening Jumbo's register. The Assistant Manager received a disciplinary action, but Goodwill Houston did not overturn Jumbo's demotion. Jumbo claims that his demotion resulted from (1) discrimination based on national origin and race; and (2) retaliation for filing a complaint against Johnson with Goodwill Houston's human resources department.

In 2020, Jumbo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), identifying Goodwill Houston as his employer. He subsequently filed an amended EEOC charge, which also identified Goodwill Houston as his employer.

Goodwill Houston's Senior Manager of Compliance Emily Conner ("Conner") responded to the initial EEOC charge and the amended EEOC charge. In response to Jumbo's initial charge, Conner identified Goodwill International as the Respondent. In response to Jumbo's amended charge, Conner listed Goodwill Houston as the Respondent.

After exhausting his administrative remedies, Jumbo brought this lawsuit against Goodwill Houston and Goodwill International. Goodwill International has filed a Motion for Summary Judgment, arguing that Jumbo's claims against Goodwill International should be dismissed, as a matter of law, because Goodwill International never employed Jumbo. Specifically, Goodwill International argues that (1) Conner misidentified Goodwill International as the Respondent in her response to the initial EEOC charge; (2) Goodwill International did not exercise control over Jumbo; and (3) Goodwill International and Goodwill Houston are not a single, integrated enterprise.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact issue is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

Although Jumbo is representing himself, "*pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *White v. Briones*, No. 09-cv-2734, 2011 WL 66134, at *3 (S.D. Tex. Jan. 7, 2011) (quotation omitted).

**ANALYSIS**

Title VII and § 1981 protect employees from various forms of discrimination and retaliation by their employers. *See Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 462 (5th Cir. 2001). "Determining whether a defendant is an 'employer' under Title

VII [and § 1981] involves a two-step process."[1] *Muhammad v. Dall. Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). First, the court considers whether the defendant meets Title VII's statutory definition of "employer." *Id.* Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). If this definition is met, the court next analyzes whether the plaintiff and defendant have an employment relationship. *Muhammad*, 479 F.3d at 380. To answer this inquiry, the Fifth Circuit applies a "hybrid economic realities/common law control test," described as follows:

> When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule. The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118–19 (5th Cir. 1993) (cleaned up). "The right to control an employee's conduct is the most important component of this test." *Id.*

Goodwill International and Jumbo do not dispute that Goodwill Houston employed Jumbo and that Goodwill International is an "employer" under Title VII's statutory definition. The parties disagree, however, on whether an employment relationship exists between Goodwill International and Jumbo. In its Motion for Summary Judgment, Goodwill International argues that Jumbo failed to raise a genuine dispute of material fact regarding this issue for three primary reasons.

First, Goodwill International argues that Jumbo's only evidence connecting himself to Goodwill International is Conner's misidentification of Goodwill

---

[1] This discussion encompasses both Title VII and § 1981 claims because the elements of each are "identical." *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994).

International in the response to Jumbo's initial EEOC charge. Attached to Goodwill International's Motion for Summary Judgment is an affidavit signed by Conner, in which she states that she "mistakenly identified the Respondent as Goodwill International rather than the appropriate entity, Goodwill Houston." Dkt. 25-1 at 2. "I didn't even know I had made the typographical error and inadvertently and mistakenly referenced Goodwill International until it was brought to my attention," Conner stated under oath. *Id.* Conner further explained that she is a Goodwill Houston employee and that she had no authority to file a position statement on behalf of Goodwill International. *See id.* In response to Jumbo's amended EEOC charge, Conner submitted a second position statement, correcting her previous mistake and correctly identifying Goodwill Houston, Jumbo's employer, as the Respondent.

Without pointing to any evidence, Jumbo argues in his summary judgment response that Conner "never informed the EEOC that she had misidentified Goodwill International as Goodwill Houston . . . because she knew that Goodwill International was the proper Respondent." Dkt. 27 at 8. This unsupported speculation fails to raise a fact issue that Goodwill International was Jumbo's employer. *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

Second, applying the hybrid economic realities/common law control test adopted by the Fifth Circuit, Goodwill International contends that it does not have an employment relationship with Jumbo because it did not (1) hire or train Jumbo; (2) establish the terms of Jumbo's employment; (3) set Jumbo's work schedule; (4) oversee Jumbo's job performance; (5) pay Jumbo's wages; nor (6) offer benefits or withhold state or federal taxes on Jumbo's behalf. In support of these statements, Goodwill International has submitted an affidavit signed by David Eagles, Goodwill International's Chief Operating Officer, stating that Goodwill International "was not involved in the hiring, training, retention, reprimand, and

5

termination of Joshua Jumbo" and "did not pay Joshua Jumbo, nor did the company offer him benefits, or withhold state or federal taxes on his behalf." Dkt. 25-2 at 1. Separately, Conner's affidavit establishes that Goodwill Houston was Jumbo's sole employer. *See* Dkt. 25-1 at 1.

Jumbo fails to respond to these arguments beyond conclusory statements that "Goodwill International controlled [his] employment" and "Goodwill International and Goodwill Houston are [Jumbo's] joint employers." Dkt. 27 at 9–10. These unsubstantiated assertions are insufficient to defeat a motion for summary judgment. *See Brown*, 337 F.3d at 541.

Third, Goodwill International argues that Jumbo cannot establish a "single employer" relationship between Goodwill International and Goodwill Houston. "[S]uperficially distinct entities may be exposed to liability [in employment discrimination/retaliation matters] upon a finding that they represent a single, integrated enterprise: a single employer." *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). To determine whether two entities are a "single employer," the Fifth Circuit looks at four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* In Title VII and related cases, the decisive question is which "entity made the final decisions regarding employment matters related to the person claiming discrimination." *Id.*

Here, there is no evidence creating a genuine issue of material fact on even one of these factors. The uncontroverted summary judgment evidence establishes that Goodwill International is the national membership headquarters for 155 independent, autonomous Goodwill organizations in the United States and Canada. Goodwill Houston is governed by its own management and board of directors. Importantly, Goodwill International has no control over Goodwill Houston's employment decisions, including, hiring, firing, promotion, and demolition decisions. And Goodwill Houston's assets are the sole property of

Goodwill Houston under the exclusive control of its board of directors. There is no genuine issue of material fact on the "single employer" issue.

## CONCLUSION

For the reasons set forth above, I recommend that Goodwill International's Motion for Summary Judgment (Dkt. 25) be **GRANTED**. Goodwill International should be dismissed from this case.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 4th day of October 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE