**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSHUA H. JUMBO, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:21-cv-03509 |
| | § | |
| GOODWILL INDUSTRIES HOUSTON, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Joshua H. Jumbo ("Jumbo"), proceeding *pro se*, brings this ethnicity- and national origin-based employment discrimination and retaliation case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. Goodwill Industries Houston ("Goodwill Houston") is the only defendant remaining in this lawsuit.[1]

Now before me is Goodwill Houston's Motion for Summary Judgment. Dkt. 43. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

### A.   JUMBO'S EMPLOYMENT WITH GOODWILL HOUSTON

Jumbo is an American citizen of Nigerian descent. Goodwill Houston hired Jumbo as a cashier in July 2018 at its Briargrove location and promoted him to a third-in-line management position at the same store in June 2019. On October 21, 2019, Jumbo applied for a store manager position at a different Goodwill store—

---

[1] Jumbo originally named both Goodwill Houston and Goodwill Industries International, Inc. ("Goodwill International") as defendants. On October 4, 2022, I recommended that Goodwill International's Motion for Summary Judgment be granted because Goodwill International was not Jumbo's employer. *See* Dkt. 34. United States District Court Judge George C. Hanks, Jr. adopted my recommendation on October 18, 2022, *see* Dkt. 42, and Goodwill International was dismissed from this lawsuit.

the Town and Country location. He did not get the job. Elizabeth Johnson ("Johnson"), the Briargrove store manager, told Jumbo that he was not qualified to be a store manager.

In December 2019, Johnson disciplined Jumbo with a written warning because his cash register had a $7.41 overage. Johnson disciplined Jumbo again in January 2020 for locking customers in the store, being rude to a customer, and failing to give a customer a donation receipt. In a form Jumbo signed on January 8, 2020 acknowledging that Goodwill Houston explained to him why he was being disciplined, Jumbo accused Johnson of retaliation because he "had applied for a store manager position." Dkt. 44-3 at 34 ("This write-up is retaliatory, oppressive, and with a pretext for a disparate treatment because I had applied for a store manager position."). Jumbo further claimed that Johnson and Christopher Hester ("Hester"), the assistant manager at the Briargrove location, were "setting [him] up for termination because of national origin." Id. at 35. Human Resources Business Partner Shannon Powers ("Powers") met with Jumbo on January 9, 2020 to address Jumbo's concerns.

On February 25, 2020, Jumbo reported that his cash register was short $20.10 and stated that he did not know how the money went missing. On March 6, 2020, Johnson demoted Jumbo to a floor associate position because of the shortage. This demotion conformed to Goodwill Houston's policy that the second occurrence of a $5 cash register discrepancy "will result in a final written warning and or demotion." Dkt. 43-7 at 4. Jumbo emailed Jim Freeze ("Freeze"), the vice president of donated goods at Goodwill Houston, on March 9, 2020 and accused Hester of "tamper[ing] with [Jumbo's] register and caus[ing] it to be $20.10 short." Dkt. 44-3 at 40. Two Goodwill Houston employees later reviewed camera footage, which showed Hester opening Jumbo's register. And Hester eventually admitted to "going in [Jumbo's] drawer to make change." Dkt. 43-15 at 3. Although Goodwill Houston subsequently disciplined Hester with a warning for his conduct, Goodwill Houston did not overturn Jumbo's demotion.

2

In late March 2020, Goodwill Houston temporarily closed due to the COVID-19 pandemic. During this closure, Jumbo filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on Goodwill Houston not promoting Jumbo to store manager and demoting Jumbo. Jumbo claimed that Goodwill Houston discriminated against him based on national origin and ethnicity and retaliated against him for complaining to HR in January 2020.

When Goodwill Houston reopened in May 2020, Jumbo refused to return to work because of "health and safety concerns." Dkt. 12 at 15. Powers placed Jumbo on a two-month leave of absence. This leave period ran from June 17, 2020[2] through August 10, 2020. On August 17, 2020, Jumbo requested additional leave, which Powers denied because his "personal leave time [had been] exhausted." Dkt. 43-17 at 2. In keeping with Goodwill Houston's personal leave policy referenced in its employee handbook, Powers informed Jumbo she would "enter [Jumbo's] resignation" if he failed to inform Goodwill Houston by Friday, August 21 if he would be returning to work. *Id.* Jumbo did not respond, and Powers entered Jumbo's resignation on August 21, 2020. Jumbo filed an amended charge of discrimination with the EEOC on September 17, 2020, claiming that Goodwill Houston "wrongfully terminated [him] in retaliation for filing the [May 6, 2020] EEOC charge." Dkt. 12 at 15.

At some point after Jumbo applied for the store manager position at the Town and Country location, Goodwill Houston decided to close the Town and Country retail location in order to launch a new concept store that included retail sales and workforce development services and training. Goodwill Houston

---

[2] According to the evidence submitted by Goodwill Houston, Powers placed Jumbo on a two-month leave of absence "for 2 months from [June 17, 2020]." Dkt. 43-16 at 2. Yet, on August 17, 2020, Powers told Jumbo that he was "placed on leave on 6/12/2020 with a return date of 8/10/2020." Dkt. 43-17 at 2. Whether the start date of this leave of absence was June 12 or June 17 appears to be irrelevant, as Jumbo was not required to inform Goodwill Houston if he would be returning to work until August 21, 2020.

eventually posted a management position for the new store, which opened in April 2021. Jumbo did not apply for the new position.

**B. THE ALLEGATIONS IN THE INSTANT LAWSUIT**

After exhausting his administrative remedies, Jumbo filed this lawsuit. First, Jumbo alleges that Goodwill Houston discriminated against him based on his national origin and ethnicity, in violation of Title VII and § 1981, when Goodwill Houston (1) did not promote him to the position of store manager; and (2) demoted him to a floor associate position. Second, Jumbo alleges that Goodwill Houston retaliated against him in violation of Title VII and § 1981, by (1) terminating him for filing a charge of discrimination with the EEOC; (2) issuing him a disciplinary warning for applying for the Town and Country store manager position; (3) demoting him because he complained of national origin discrimination; and (4) refusing to promote him to store manager.

Goodwill Houston moves for summary judgment, arguing that Jumbo's claims against it should be dismissed as a matter of law because there is no genuine dispute as to any material fact.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact issue is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports

that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

Although Jumbo is representing himself, "*pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *White v. Briones*, No. 09-cv-2734, 2011 WL 66134, at *3 (S.D. Tex. Jan. 7, 2011) (quotation omitted).

## ANALYSIS

### A.   TITLE VII AND § 1981 DISCRIMINATION

Jumbo contends that Goodwill Houston discriminated against him on account of his ethnicity and national origin in violation of Title VII and § 1981. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"); *id.* § 1981(a) (providing that all individuals shall have the same rights as "white citizens").

"The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). No single accepted definition of ethnicity exists, but "[u]nder a broad definition, ethnicity refers to physical and cultural characteristics that make a social group distinctive." Juan F. Perea, *Ethnicity and the Constitution: Beyond the Black and White Binary Constitution*, 36 WM. & MARY L. REV. 571, 575 (1995). Jumbo contends that his ethnicity is African, and his national origin is Nigerian.

Because §1981 claims are judged under the same standards as Title VII claims, I am able to evaluate the sufficiency of both claims at the same time. *See Hudson v. Lincare, Inc.*, 58 F.4th 222, 228 n.4 (5th Cir. 2023).³

Unlawful discrimination may be established through either direct or circumstantial evidence. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Because Jumbo relies on circumstantial evidence, I must apply the familiar burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze his discrimination claims. *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *See id.*

The particular elements of a prima facie case of discrimination vary slightly depending on the nature of the Title VII claim. I will address the specific elements for a failure-to-promote claim and a wrongful demotion claim in detail below.

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). The defendant's burden is low—it is merely one of production, not persuasion. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) ("If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993))). If the employer articulates a legitimate, non-discriminatory reason for its employment decision, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

---

³ While § 1981 does not protect against national origin discrimination, the statute does prohibit discrimination based on ethnicity. *See Loco Brands, LLC v. Butler Am., LLC*, No. 6:18-CV-69-JDK, 2020 WL 6815167, at *4 (E.D. Tex. Jan. 30, 2020) (collecting cases).

The plaintiff must "produce 'substantial evidence' that [the employer's] proffered reason is pretext for race discrimination." *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (quotations omitted).

### 1. Failure-to-Promote Claim

Jumbo alleges that Goodwill Houston discriminated against him on the basis of his ethnicity and national origin by failing to promote him to the position of store manager. In a failure-to-promote case, a plaintiff establishes a prima facie case of discrimination by demonstrating that:

> (1) [he] is a member of the protected class; (2) [he] sought and was qualified for a position for which applicants were being sought; (3) [he] was rejected for the position; (4) the employer hired a person outside of the plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications.

*McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015).

The parties do not dispute that Jumbo satisfies the first element of a prima facie case for failure-to-promote discrimination, and I will assume that Jumbo satisfies the third element because "he was passed over for promotion." *Hernandez v. Metro. Transit Auth. of Harris Cnty.*, 673 F. App'x 414, 418 (5th Cir. 2016). Jumbo must still show that he was qualified for the position (the second element) and that Goodwill Houston gave the promotion to someone outside Jumbo's protected class or continued to seek applicants (the fourth element). He is unable to do either.

### (a) Was Jumbo Qualified for the Sales Manager Position (the Second Element)?

The second prong of a prima facie failure-to-promote case asks whether Jumbo was qualified for the store manager position at the Town and Country location. Goodwill Houston argues that Jumbo was not qualified, as a matter of company policy, to jump from a "third-in-line management position" to a

7

"first-in-line store manager position" because he had not received the requisite management track training provided by the company. Dkt. 43 at 18. Specifically, Goodwill Houston contends that Jumbo first needed to serve as a second-in-line assistant store manager where he would "learn and demonstrate that [he] can schedule work shifts, manage employee needs, and handle operations unique to [the] Goodwill business model." Dkt. 43-1 at 3.

In response, Jumbo says he meets the minimum qualifications for the store manager position because of his education, training, and job experience as a store manager at Dollar General Corporation and the AARP Foundation. Goodwill Houston said that it "did not consider Jumbo's prior experience sufficient for immediate placement as a manager." Dkt. 43-1 at 3.

Jumbo has not met his burden of showing that he was qualified for the store manager position. Jumbo had served in the third-in-line management position for only four months at the time of his application. The uncontroverted summary judgment evidence establishes that "Goodwill does not promote, as a matter of practice, straight from a 3rd Key Manager to a Store Manager, and certainly would not promote someone with only four months of management experience at the 3rd Key level." Dkt. 43-1 at 4; *see Scales v. Slater*, 181 F.3d 703, 710 (5th Cir. 1999) ("[The employer] had the discretion to consider additional qualifications and [the plaintiff] did not meet those qualifications."). Accordingly, Jumbo fails to satisfy the second element of a prima facie case of failure-to-promote discrimination. Jumbo's failure to satisfy the second element is an independent and sufficient basis to award summary judgment to Goodwill Houston on Jumbo's failure-to-promote discrimination claim.

> **(b) Did Goodwill Houston Hire a Person Outside of Jumbo's Protected Class or Continue to Seek Applicants with Jumbo's Qualifications for a Store Manager Position at the Town and Country Location (the Fourth Element)?**

Even if Jumbo could show that he was qualified for the Town and Country store manager position, he cannot show that someone outside of his protected class received the position or that Goodwill Houston continued to seek applicants for the store manager position.

Although Goodwill Houston now claims that the Town and Country store manager position "was never filled," Dkt. 43 at 14, Goodwill Houston told the EEOC the exact opposite, stating in its position statement submitted to the agency that "the position had been filled." Dkt. 44-5 at 6.

Even assuming the store manager position had been filled, Jumbo presents no summary judgment evidence showing who received the position. Was the person white, black, Hispanic? Was the person of American descent, European descent, or African descent? Was the person's ethnicity Nigerian, Australian, American, or something else? The summary judgment record lacks any answers to these fundamental questions. At a bare minimum, Jumbo has failed to demonstrate that someone outside of his protected class received the Town and Country store manager position. He is thus unable to satisfy the fourth prong of a prima facie failure-to-promote case.

***

Because Jumbo cannot establish elements two or four of a prima facie case of failure-to-promote discrimination, Goodwill Houston is entitled to summary judgment on such a claim.

### 2. Wrongful Demotion Claim

Jumbo also alleges that Goodwill Houston discriminated against him on the basis of his ethnicity and national origin when Goodwill Houston demoted Jumbo for a cash register violation while his co-worker, Hester, received only a warning for a similar violation.

To establish a prima facie case of a wrongful demotion under Title VII, a plaintiff must show that:

9

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

The parties do not dispute that Jumbo satisfies the first three elements of a prima facie case for wrongful demotion. Instead, Goodwill Houston challenges only the fourth element, arguing that "Jumbo cannot compare his second violation for a cash register discrepancy to Christopher Hester (also an African American) who was disciplined with a warning for his first, not second, violation." Dkt. 43 at 23.

To be clear, both Jumbo and Hester were disciplined (that is, given a warning) for their first cash register discrepancy. Jumbo's first violation occurred in December 2019 when his cash register had a $7.41 overage. Hester's first violation occurred on February 25, 2020, when he improperly entered Jumbo's cash register during business hours to make change, after which Jumbo's cash register was short. Goodwill Houston argues that Jumbo and Hester are not similarly situated because Jumbo was demoted as a result of his *second* violation for a cash register discrepancy, whereas Hester's cash register discrepancy was only his first. The problem with Goodwill Houston's position is that the summary judgment evidence suggests that Hester, not Jumbo, was responsible for the $20 shortage from Jumbo's cash register on February 25, 2020—the so-called "second violation." It is hard to understand how Jumbo could be blamed for a cash register discrepancy when Hester was disciplined for improperly entering Jumbo's cash register during business hours. Goodwill Houston makes no attempt to explain why Jumbo and Hester were both punished for the same cash register discrepancy.

Stated simply, both Jumbo and Hester likely had only one true violation each for a cash register discrepancy. The summary judgment evidence suggests that Jumbo may have disciplined for Hester's violation. This is enough, construing the

evidence in the light most favorable to Jumbo, to create a fact issue that Jumbo and Hester were (or should have been) similarly situated. Consequently, Jumbo has established a prima facie case of discrimination, and the burden shifts to Goodwill Houston to proffer a legitimate, non-discriminatory reason for demoting Jumbo.

Goodwill Houston contends that its stated reason for demoting Jumbo—that he received his second cash register violation for a cash discrepancy—is legitimate and non-discriminatory. By articulating this reason and pointing to its company policy, *see* Dkt. 43-7 at 4, Goodwill Houston has met its low burden of production. *See Daigle*, 70 F.3d at 396.

The burden then shifts back to Jumbo to produce "substantial evidence" that Goodwill Houston's reason is merely pretext for discrimination. *Watkins*, 997 F.3d at 283. Again, Jumbo's summary judgment evidence suggests that Jumbo was disciplined for Hester's violation and indicates that Goodwill Houston's rationale for Jumbo's demotion is "unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). Viewing the evidence in the light most favorable to Jumbo, as I must, I conclude that Jumbo has produced substantial evidence of pretext based on his demotion from a third-in-line management position to a floor associate position. *See Watkins*, 997 F.3d at 283 (finding "a genuine dispute of material fact on the question whether [the defendant's] proffered reason for firing [the plaintiff] is pretext for race discrimination" where the defendant treated a similarly situated employee differently). Accordingly, summary judgment should be denied on Jumbo's wrongful demotion discrimination claim.

**B.     TITLE VII AND § 1981 RETALIATION**

Jumbo also claims that Goodwill Houston violated Title VII and § 1981 by retaliating against him for filing various complaints. Although Jumbo's pleadings are far from a picture of clarity, I can decipher several distinct claims of retaliation that Jumbo raises: (1) that Goodwill Houston wrongfully terminated him on August 21, 2020 in retaliation for filing a discrimination charge with the EEOC on

11

May 6, 2020; (2) that he received a written warning in January 2020 in retaliation for applying for the Town and Country store manager position in October 2019; (3) that Goodwill Houston demoted him to a floor associate position on March 6, 2020 because he complained of national origin discrimination on January 9, 2020; and (4) that he failed to receive the Town and Country sales manager position because he filed a complaint with Goodwill Houston's human resources department in January 2020, alleging that he "was being discriminated against because of [his] National Origin (Nigerian)." Dkt. 44-5 at 24.

To set out a prima facie case of retaliation under Title VII and § 1981, Jumbo must show that (1) he engaged in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there is a causal link between elements (1) and (2). *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). As with discrimination claims, retaliation claims under Title VII and § 1981 are analyzed under the *McDonnell Douglas* burden-shifting framework:

> If a plaintiff succeeds in making a prima facie case, the burden shifts to the defendant to proffer a legitimate rationale for the underlying employment action. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation.

*Id.* (cleaned up).

I will address each of Jumbo's retaliation claims individually.

### 1. Jumbo's Claim that Goodwill Houston Wrongfully Terminated Him on August 21, 2020 in Retaliation for Filing a Discrimination Charge with the EEOC on May 6, 2020

Jumbo first alleges that Goodwill Houston wrongfully terminated him on August 21, 2020 in retaliation for filing a discrimination charge with the EEOC on May 6, 2020.

Goodwill Houston argues that this retaliation claim fails because Jumbo cannot establish the second element of a retaliation claim—an adverse employment action. Goodwill Houston maintains that Jumbo "was not terminated but resigned" after he "failed to return to work after exhausting all his leave." Dkt.

12

43 at 25. Jumbo acknowledges that he did not return to work, stating only that he "informed Powers of his high risk" to COVID-19. Dkt. 44 at 31. Whatever his reason, Jumbo's argument does nothing to change the fact that he did not return to work after taking the maximum amount of personal leave allowed by Goodwill Houston.

Goodwill Houston's employee handbook expressly states that "[e]mployees must return to work on the date approved at the time of the leave of absence or their employment status will be changed to a voluntary resignation." Dkt. 43-3 at 46. Jumbo was aware of this policy and made a deliberate decision not to return to work when his leave expired in August 2020. He thus resigned from Goodwill Houston. He was not terminated.

"A resignation is actionable under Title VII only if the resignation qualifies as a constructive discharge." *Newbury v. City of Windcrest*, 991 F.3d 672, 577 (5th Cir. 2021) (cleaned up). To establish constructive discharge, a plaintiff must show that "the employer deliberately ma[de] an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). Jumbo does not make any effort to establish constructive discharge.

Because Jumbo resigned from his job, he cannot establish an adverse employment action relating to his claim of retaliation for filing a discrimination charge with the EEOC. This claim thus fails as a legal matter.

> **2. Jumbo's Claim that He Received a Written Warning in January 2020 in Retaliation for Applying for the Town and Country Store Manager Position in October 2019**

In January 2020, Goodwill Houston issued Jumbo a warning for locking customers inside the Briargrove location and failing to provide a donation receipt. Jumbo contends that Goodwill Houston issued him this written warning in retaliation for him applying for the Town and Country store manager position.

For starters, Jumbo applying for a store manager position does not qualify as a "protected activity" required to establish the first prong of a prima facie Title

13

VII retaliation claim. As explained by the Fifth Circuit, an employee has engaged in protected activity if he or she has: (1) "opposed any practice made an unlawful employment practice" by the statute; or (2) "made a charge, testified, assisted, or participated in any manner" in a Title VII investigation, proceeding, or hearing. *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). Applying for a promotion is not the opposition of an employment practice, nor does applying for a promotion relate to an investigation, proceeding, or hearing—it simply is not a "protected activity."

But there is another independent reason this claim fails. Jumbo cannot establish any adverse employment action (prong two of a prima facie case of retaliation). Jumbo claims that Goodwill Houston improperly issued a written warning to him. This is not enough. It has long been the rule in the Fifth Circuit that disciplinary warnings do not constitute adverse employment actions for purposes of Title VII. *See Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) ("[D]isciplinary write-ups . . . are not materially adverse employment actions."); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 855 (S.D. Tex. 2010) ("By themselves, documented reprimands, though potentially affecting future employment decisions, do not qualify as adverse employment decisions."). Accordingly, any written warning that Jumbo received does not qualify as an adverse employment action.

The end result of this analysis is that Jumbo cannot establish a prima facie retaliation claim as a result of his applying for the Town and Country store manager position. Summary judgment is warranted on this claim as well.

### 3. Jumbo's Claim that Goodwill Houston Demoted Him to a Floor Associate Position on March 6, 2020 in Retaliation for His Complaint of National Origin Discrimination to Human Resources on January 9, 2020

Jumbo next claims that Goodwill Houston demoted him to a floor associate position in retaliation for his complaint of national origin discrimination made to

14

human resources on January 9, 2020. This claim should survive summary judgment.

On this claim, there is no question that Jumbo has satisfied his burden to establish the three elements of a prima facie retaliation claim. First, he can demonstrate that he engaged in an activity protected by Title VII—that is, a complaint to the human resources department of discrimination. *See Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (an employee has engaged in activity protected by Title VII if he "'opposed any practice' made unlawful by Title VII" (quoting 42 U.S.C. § 2000e–3(a))); *Hudson*, 58 F.4th at 231 (complaints to human resources are protected activities). Second, Jumbo can show that he suffered an adverse employment action—a demotion. *See Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) ("For Title VII and § 1981 discrimination claims, we have held that adverse employment actions consist of 'ultimate employment decisions' such as . . . demoting."). Third and finally, Jumbo can show that there is a causal link between the protected activity (his complaint to human resources on January 9, 2020) and the adverse employment decision (his demotion on March 6, 2020). "If an adverse employment action occurs within close temporal proximity to protected activity known to the employer, a plaintiff will have met h[is] burden to establish a prima facie case of retaliation." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020). The time period of less than two months between Jumbo's complaint to human resources and his demotion satisfies the temporal proximity necessary to meet the causation standard under Title VII and § 1981. *See Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (The Fifth Circuit "has previously held that a period of two months is close enough to show a causal connection.").

Because Jumbo has made a prima facie showing of retaliation on the wrongful demotion claim, the burden shifts to Goodwill Houston to give a legitimate, non-retaliatory reason for Jumbo's demotion. Again, Goodwill Houston argues that its stated reason for demoting Jumbo—that he received his second cash

register violation for a cash discrepancy—is legitimate and non-retaliatory. Taking Goodwill Houston's stated reason and the evidence "as true," Goodwill Houston has met its low burden of production. *See Daigle*, 70 F.3d at 396.

The final part of the analysis concerns whether Jumbo can demonstrate (or at this stage, raise a fact issue) that Goodwill Houston's legitimate, non-retaliatory reason for his demotion was pretext for retaliation. To do so, Jumbo "must show a conflict in substantial evidence on the question of whether [Goodwill Houston] would not have taken the [adverse] action but for [Jumbo's] protected activity." *Feist v. La. Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013) (quotations omitted).

As I stated above, the summary judgment evidence suggests that Jumbo was disciplined a second time for Hester's violation of company policy. Given that less than two months passed between Jumbo's retaliation complaint on January 9, 2020 and his demotion on March 6, 2020, a reasonable juror could find that Goodwill Houston retaliated against Jumbo by demoting him. Accordingly, I conclude that Jumbo has produced substantial evidence of pretext. Summary judgment should be denied on Jumbo's demotion-based retaliation claim.

4. **Jumbo's Claim that Goodwill Houston Refused to Promote Him to the Town and Country Sales Manager Position in Retaliation for Filing a Complaint with Goodwill Houston's Human Resources Department in January 2020 Alleging National Origin Discrimination**

Jumbo's final retaliation claim is that Goodwill Houston failed to promote him to the Town and Country store manager position due to his filing a complaint with Goodwill Houston's human resources department in January 2020 alleging national origin discrimination.

Jumbo unquestionably engaged in protected activity under Title VII when he complained in January 2020 to human resources that he had allegedly been discriminated against based on his national origin. Although Jumbo need not show that the protected activity was the but-for cause for retaliation at the prima facie stage, he must show that the two "are not completely unrelated." *Besser v. Tex.*

16

*Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020) (quotation omitted). The problem Jumbo faces here is one of timing. Jumbo readily admits that he told Johnson of his application for the Town and Country store manager position on October 21, 2019, and that Johnson informed Jumbo "immediately" that he "should not have applied for the position because a Third Key Manager could not jump to a Store Manager position." Dkt. 44-5 at 8. In other words, Jumbo knew on October 21, 2019 that he was not getting the Town and Country store manager spot. Indeed, Jumbo specifically told the EEOC that he "was not even given consideration of an interview because my Store Manager Elizabeth Johnson blocked my application." *Id*. Given this timeline, it is clear that Jumbo's application for the Town and Country store manager slot had been rejected *before* he complained of national origin discrimination in January 2020.

As Goodwill Houston correctly points out: "[t]here is no evidence that Jumbo had engaged in any Title VII protected activity *prior* to his promotion application to support his retaliation claim and certainly no evidence that he notified Goodwill [Houston] of it." Dkt. 43 at 26 (emphasis added). This is critical. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."). Even when viewing the facts in the light most favorable to Jumbo, he has failed to establish the third prong of a prima facie retaliation case—that is, he cannot demonstrate that there is a causal link between a protected activity and an adverse employment action. As such, summary judgment is warranted on this claim.

## CONCLUSION

For the reasons explained above, I recommend that Goodwill Houston's Motion for Summary Judgment (Dkt. 43) be **GRANTED** in part and **DENIED** in part. The only claims that should survive summary judgment are Jumbo's

discrimination and retaliation claims under Title VII and § 1981 based on an alleged wrongful demotion.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 7th day of August 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE